**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━

**DREW T. W.**

                         **Plaintiff,**                         **6:22-CV-6176Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                         **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━

**DECISION AND ORDER**

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all

proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff applied for supplemental security income ("SSI"), benefits with

the Social Security Administration ("SSA"), on October 11, 2018, at the age of 32,

alleging disability due to post-traumatic stress disorder; anxiety; herniated discs with

constant pain; and bullet fragments in spine. Dkt. #5, p.89.

On February 28, 2020, plaintiff appeared by telephone conference call

with counsel and testified, along with an impartial vocational expert ("VE"), Yaakov

Taitz, at an administrative hearing before Administrative Law Judge ("ALJ"), Brian Kane. Dkt. #5, pp.35-88. Plaintiff testified that he stopped working because he had a lot of pain and didn't feel good, explaining that he was depressed and was on and off of his medicine because of side effects. Dkt. #5, p.48. Plaintiff was on parole, which required him to attend mental health and substance abuse treatment programs, but did not require that he look for work. Dkt. #5, pp.52 & 68. He suffers from lower back and hip pain which prevents him from sitting for more than 20 minutes at a time or standing for more than 10-15 minutes at a time. Dkt. #5, pp.61-62. He can walk a block or two. Dkt. #5, p.62. He feels a nerve pinch in his back and shoot pain down his leg if he bends too fast. Dkt. #5, pp.62-63. He experiences nightmares and has trouble sleeping. Dkt. #5, p.65. He has been diagnosed with anxiety, depression and post-traumatic stress disorder, explaining that some days he is sad and doesn't like to leave his room. Dkt. #5, p.66. He also experiences panic attacks. Dkt. #5, p.69. He lives with his mother and sister. Dkt. #5, pp.78-80.

When asked to assume an individual with plaintiff's age, education and past work experience who was limited to sedentary exertion with no more than occasional interaction with coworkers and the general public, the VE testified that plaintiff could not perform his past work as a cafeteria attendant, but could work as an addresser, document preparer and toy stuffer, each of which are unskilled, sedentary positions. Dkt. #5, pp.54-56. The VE further opined that no employment would be available if the individual was off task more than 10% of the work day or absent more than two days per month. Dkt. #5, pp.56-57.

The ALJ rendered a decision that plaintiff was not disabled on February 18, 2021. Dkt. #, pp.19-29. The Appeals Council denied review on February 15, 2022. Dkt. #5, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on April 18, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step

-3-

sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since his application date of October 11, 2018; (2) plaintiff's lower back pain following a gunshot wound, anxiety, and post-traumatic stress disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed

impairment; (4) plaintiff retained the RFC to perform work at the sedentary[1] exertional level with occasional interaction with coworkers and the public; and (5) plaintiff was capable of working as an addresser, document preparer, and toy stuffer, each of which were unskilled, sedentary positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #5, pp.21-28. In reaching this conclusion, the ALJ considered - but found unpersuasive - medical source opinions from plaintiff's treating physician, Jacob Scutaru, M.D., and plaintiff's mental health counselor, Shantel Giles. Dkt. #5, pp.25-27.

Dr. Scutaru completed a Physical Assessment for Determination of Employability for the Monroe County Department of Human Services dated January 2, 2020 indicating that plaintiff had no evidence of limitations walking/standing and was able to stand up to 1/3 of a workday and sit up to 2/3 of a workday. Dkt. #5, p.410.

On February 13, 2020, Dr. Scutaru completed a Physical Treating Medical Source Statement diagnosing plaintiff with adjustment disorder, retained gunshot wound and low back pain, opining that plaintiff suffered from anxiety with symptoms frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks. Dkt. #5, p.444. Dr. Scutaru opined that plaintiff could

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 416.967(a).

stand/walk 20 minutes at a time and about 2 hours in an 8-hour day and sit 20 minutes

at a time and about 4 hours in an 8-hour day. Dkt. #5, p.444. He would need to shift

positions at will and walk for a minute every 15 minutes and rest 15 minutes every hour

of the workday. Dkt. #5, p.445. Dr. Scutaru opined that plaintiff would be absent from

work more than 4 days per month. Dkt. #4, p.768.

By letter dated July 17, 2020, in response to the ALJ's inquiry into "the

discrepancies between these opinions, Dr. Scutaru explained:

> As I cannot observe the patient sitting or standing for more
> than a very limited amount of time, and a regular PCP office
> does not have the tools and expertise to provide a
> comprehensive assessment of ability, my assessment was
> based on a limited physical exam, as well as his subjective
> history of disease.
>
> Of note, at the time of this writing, he's had an X-ray
> confirming the presence of foreign objects from his reported
> spinal gun shot wound, as well as evaluation by neurology
> and physical therapy and orthopedics (the latter two of which
> are not available to me at this time).
>
> Neurology has noted no overt radiculopathy and likely
> referred pain.

Dkt. #5, p.673.

"Due to the differences in the opinions as well as Dr. Scuraru noting the

limitations of his opinions and that they are based, at least in part, on the [plaintiff's]

subjective reports," the ALJ found Dr. Scutaru's opinions "unpersuasive as they are

inconsistent and unsupported by each other, or the [plaintiff's] minimal treatment for

back pain with mild findings on objective scans." Dkt.#5, p.26.

On February 24, 2020, mental health counselor Shantel Giles completed a Treating Medical Source Statement (Mental). Dkt. #5, p.450. MHC Giles indicated that plaintiff had attended therapy biweekly since August 8, 2019 and had been diagnosed with posttraumatic stress disorder, depression, and anxiety. Dkt. #5, p.450. She identified the following symptoms: thoughts of suicide; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; paranoid thinking or inappropriate suspiciousness; emotional withdrawal or isolation; hallucinations or delusions; flight of ideas; sleep disturbance; and involvement in activities that have a high probability of painful consequences which are not recognized. Dkt. #5, p.451. MHC Giles opined that plaintiff's

> ability to concentrate while completing tasks does not seem compatible for fulltime work. His mood and symptoms seem to cause distress limiting [plaintiff's] daily function.

Dkt. #5, p.450. More specificaly, MHC Giles opined that plaintiff

> is limited in the area of concentration, social interaction and adaptation. [Plaintiff] has a history of trauma since childhood that causes him daily distress and paranoia limiting his ability to focus at times due to racing thoughts. Social interaction[s] are limited by increased anxiety and fear of being harmed by others. Adaptation is limited due to change increasing [plaintiff's] symptoms causing distress. Increase in distress results in increase in paranoia resulting in irritability and the feeling of needing to escape.

Dkt. #5, p.453. MHC Giles indicated that plaintiff would be precluded from performing for more than 20% of an 8-hour day in all tasks relating to understanding and memory; sustained concentration and memory; social interaction; and adaptation. Dkt. #5, pp.452-453. She also indicated that plaintiff was completely precluded from dealing with

normal work stress. Dkt. #5, pp.452-453. She explained that plaintiff's mood tends to be

depressed and anxious and that he appears restless and paranoid. Dkt. #5, p.450.

Finally, she opined that plaintiff was moderately impaired in his ability to understand,

remember or apply information and to concentrate, persist or maintain pace; markedly

limited in his ability to interact with others; and extremely limited in his ability to adapt or

manage himself. Dkt. #5, p.455.


       By letter dated July 1, 2020, the ALJ asked for clarification, noting that

MHC Giles'

> ratings appear to be at odds with treatment notes that I have
> now reviewed, which appear to show that around the time
> you completed this form, the [plaintiff] reported not taking
> prescribed medication, and on the same date you completed
> the form, you reported that "[plaintiff] is in the continuation
> stage of treatment and progress is good." . . .

> In treatment notes over the following weeks, it appears that
> the [plaintiff] completed the requirements for mandated
> substance use treatment, and he applied for help finding
> work from ACCES-VR. He expressed interest in acquiring a
> commercial driver's license ("CDL").

Dkt. #5, p.675. In response to this request, MHC Giles submitted treatment notes from

January 27, 2020 through November 12, 2020. Dkt. #5, pp.693 -760.


       The ALJ found MHC Giles' opinion unpersuasive because it was "more

limiting than plaintiff's treatment notes . . . specifically the mostly normal mental status

exams." Dkt. #5, p.27. The ALJ also relied upon plaintiff's testimony that he is able to

drive, lives with his mother and sister, and has a girlfriend as failing to support the

limitations suggested by MHC Giles. Dkt. #5, p.27.

Plaintiff argues that it was error for the ALJ to reject all of the opinion evidence in the record. Dkt. #6-1, pp.13-17. Given that there were no consultative opinions, plaintiff argues that the ALJ necessarily decided the case based upon his own lay opinion of the evidence, which is improper, particularly given the complexity of assessing mental limitations. Dkt. #6-1, pp.13-16. Finally, plaintiff argues that the ALJ failed to adequately develop the record, noting that consultative examinations were identified as necessary, but never scheduled.[2] Dkt. #6-1, p.16.

The Commissioner responds that the ALJ's decision is supported by substantial evidence and that the ALJ properly relied upon largely unremarkable physical and mental examination findings, mild findings on medical imaging, and plaintiff's own descriptions of his functioning to conclude that he was capable of performing a range of sedentary work with additional mental limitations. Dkt. #8-1, p.2. The Commissioner further argues that because the evidence of record was sufficient to render a determination regarding plaintiff's RFC, neither a consultative examination nor expert testimony was required. Dkt. #8-1, p.20.

---

[2] On January 28, 2019, agency physician R. Abueg, M.D., determined that there was insufficient evidence to evaluate plaintiff's claim due to his incarceration and A. Chapman, Psy.D., determined that there was insufficient evidence to properly evaluate the severity of plaintiff's alleged psychiatric impairment. Dkt. #5, pp.92 & 94. On May 31, 2019, S. Padmaraju, MD., noted that consultative examinations had been cancelled because plaintiff was incarcerated and that the medical evidence of record was insufficient to make a determination and S. Bhutwala, Ph.D., noted that consultative examinations had been cancelled because plaintiff was incarcerated and that there was insufficient evidence to properly evaluate the severity of the alleged psychiatric impairment. Dkt. #5, pp.104 & 106.

Because an ALJ is not a medical professional, an ALJ is not qualified to assess a plaintiff's RFC on the basis of bare medical findings. *Ortiz v. Colvin*, 298 F. Supp.3d 581, 586 (W.D.N.Y. 2018); *See Gregorio v. Comm'r of Soc. Sec.*, 515 F. Supp.3d 40, 45 (W.D.N.Y. 2021) ("ALJ may not interpret raw medical data in functional terms."). As a result, an ALJ's determination of RFC in the absence of a medical source statement will generally be deemed unsupported by substantial evidence. *Dennis v. Colvin*, 195 F. Supp.3d 469, 474 (W.D.N.Y. 2016). Thus, "[d]ecisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence." *Richard B. v. Comm'r of Soc. Sec.*, 20-CV-7107, 2023 WL 3527841, at * 4 (W.D.N.Y. May 18, 2023) (collecting cases).

Where the record contains sufficient evidence from which an ALJ can assess the plaintiff's RFC, however, a medical source statement or formal medical opinion is not necessarily required. *Monroe v. Comm's of Soc. Sec.*, 676 Fed. App'x 5, 8 (2d Cir. 2017). If the record is clear and contains a useful assessment of the plaintiff's limitations from a medical source, for example, a formal medical opinion may not be necessary. *Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp.3d 122, 127 (W.D.N.Y. 2018). Particularly where the record reflects only minor impairments, it is permissible for an ALJ to render a common sense judgment about functional capacity even without the assessment of a medical provider. *Ciara B. v. Comm'r of Soc. Sec.*, 610 F. Supp.3d 515, 522 (W.D.N.Y. 2022). This leeway is not typically extended to mental limitations, which are by their very nature, highly complex and individualized, and not, therefore, the

sort of inquiry susceptible to evaluation by a layperson. *Id.* "[S]ituations where an ALJ is entitled to make a determination as to mental residual functional capacity without any opinion evidence at all are rare, and depend on the level of detail about functional capacity contained in the treatment notes." *Russell D. v. Comm'r of Soc.,* 21-CV-964, 2024 WL 3228050, at *6 (W.D.N.Y. June 26, 2024); *See Kiggins v. Comm'r of Soc. Sec.*, 17-CV-6642,  2019 WL 1384590, at *5 (W.D.N.Y. Mar. 27, 2019) (Especially in the context of disability claims based on mental illness, an ALJ's formulation of an RFC without specifically crediting medical opinion evidence of record is fraught with peril.).

   Regardless of the validity of the ALJ's rejection of the opinions of plaintiff's medical provider, this is not a case where an ALJ could assess physical limitations based upon a common sense review of medical records. Plaintiff's treatment records note bullet fragments over plaintiff's right iliac bone posterior to L4-L5 from a gunshot wound (Dkt. #5, p.329), paraspinal spasm (Dkt. #5, p.415), antalgic gait pattern and positive straight leg raise on the right, as well as strength and range of motion limitations (Dkt. #5, pp.371-373). Whether such findings suggest the capacity for sedentary work is beyond the ken of a layperson. *See Richard B.,* 2023 WL 3527841, at *3 (remanding where ALJ rejected medical opinion evidence and assessed RFC "without explaining, other than with reference to his own lay judgment, how he arrived at the limitations in that RFC); *Spivey*, 338 F. Supp.3d at 128 (remanding to obtain a medical opinion as to plaintiff's limitations where record lacks information relating plaintiff's symptoms and diagnoses to specific residual capacities).

The ALJ's assessment of plaintiff's mental limitations is even more problematic. Plaintiff referred himself to therapy to address posttraumatic stress, depression and anxiety and to obtain medications that were prescribed while he was incarcerated. Dkt. #5, p.464. On August 8, 2019, Mary Loverdi, LMSW completed a comprehensive psychosocial evaluation of plaintiff, noting that plaintiff appeared to be anxious but that his mental status examination was otherwise within defined limits. Dkt. #5, p.463. On October 1, 2019, LMSW Loverdi reported that plaintiff "arrived in anxious, and depressed mood . . . feeling overwhelmed with life issues and feeling anxious and triggered by people and places." Dkt. #5, p.480.  MHC Giles similarly noted that plaintiff "presented as anxious and depressed" on November 2, 2019 (Dkt. #5, p.484), and on November 27, 2019, plaintiff expressed concern "about overwhelming paranoia." Dkt. #5, p.488. On December 30, 2019, plaintiff reported "extreme paranoia that prevents him from engaging in social activities." Dkt. #5, p.492. MHC Giles continued to note plaintiff to be anxious, depressed and paranoid. Dkt. #5, pp.500, 504, 510.

On June 16, 2020, plaintiff was observed during a video session from his car to be "constantly looking around exhibiting paranoia and anxiousness." Dkt. #5, p.577. Although plaintiff expressed excitement about enrolling in the Access VR program to obtain a CDL and start a career on July 14, 2020 (Dkt. #5, p.717), and felt that his symptoms were manageable with coping skills and consistency in his medication regime, he continued to report fluctuation in his symptoms of depression, anxiety and stress on September 2, 2020 (Dkt. #5, p.705), and presented as anxious and irritable on November 12, 2020, reporting increased symptoms, stating:

> My mental health just changes up and I cannot keep a job
> like that. How can I work if depression comes out of nowhere
> or if I [sic] aggravated and cannot be around people. I have
> bullets in my back, even the physical therapist said there is
> nothing they can do for me.

Dkt. #5, p.687. Plaintiff reported medication compliance, recognizing that he noticed increased sleep difficulties and hallucinations when he did not take his medication consistently. Dkt. #5, p.687. MHC Giles offered partial hospitalization as a treatment intervention for his report that he felt "like the walls are closing in and something bad is going to happen." Dkt. #5, p.687.

Given the consistency and severity of plaintiff's mental symptoms throughout mental health treatment over the course of more than a year, it was inappropriate for the ALJ to rely upon plaintiff's ability to drive, live with his mother and sister, and sustain a relationship with his girlfriend to determine that plaintiff's sole nonexertional limitation was "only occasional interactions with coworkers and the public." Where, as here, mental health treatment notes do not provide a meaningful assessment of plaintiff's functional limitations in the workplace from which a lay person could reasonably derive a mental RFC finding, the ALJ is required to recontact the treating source, order a consultative examination, or obtain testimony from a medical expert at the administrative hearing. *John L. v. Comm'r of Soc. Sec.*, 20-CV-925, 2021 WL 9629025, at *5 (W.D.N.Y. Sept. 3, 2021); *See Jennifer S.-M.*, 21-CV-734, 2023 WL 3455435, at *10-11 (W.D.N.Y. May 12, 2023) (remanding where ALJ recognized a severe impairment of depression, but rejected all of the opinion evidence regarding plaintiff's mental functioning and therefore "lacked any guidance from a medical

professional to ensure that the RFC finding adequately accounted for plaintiff's mental

limitations.").

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings

(Dkt. #6), is granted and the matter is remanded for further proceedings and the

Commissioner's motion for judgment on the pleadings (Dkt. #8), is denied.


The Clerk of the Court is directed to close this case.


**SO ORDERED.**


**DATED:**      **Buffalo, New York**
              **September 30, 2024**

                                          **s/ H. Kenneth Schroeder, Jr.**  
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**

-14-